FIRST PRESBYTERIAN CHURCH OF SALEM, APPELLEE, *v.* TARR ET AL., APPELLANTS.

(Decided November 1, 1939.)

*Messrs. Boone & Campbell* and *Mr. Joel Sharp,* for appellee.

*Mr. W. O. Wallace,* for appellants.

NICHOLS, P. J.  Ida L. McNutt, a resident of Salem, Columbiana county, Ohio, died July 4,1931, leaving a last will and testament which has been duly admitted to probate and record in that county.

Item three of the will is as follows:

"I give and devise to the First Presbyterian Church, of Salem, Ohio, my home known as number 125 Lincoln avenue, in the city of Salem, to be used as a parsonage; and I give to the Home for Aged Women of Salem, Ohio, the sum of two thousand dollars ($2000); and the sum of ten dollars ($10) each to my following neices and nephews: Russell Hum, of Columbiana, Ohio; Ruben Hum, of Niles, Ohio; Frank Hum of Mansfield, Ohio; Delmar Hum, of Mansfield, Ohio; Nellie Fischer of Pittsburgh, Pa.; and Grace Flickinger of Pleasant Grove, Ohio."

By items four and five of the will testatrix gave and devised "all of the residue of my property, personal and real, to which I may be legally or equitably entitled at the time of my decease" as therein specifically provided, no further reference being made in the will as to the home property described in item three.

Item six nominated and appointed the executor of the will, provided for the substitution of another in case the named executor could not act, and granted certain powers to the appointee, having no relation to the questions under consideration in this litigation.

On or about April 21, 1932, the executor filed an application to transfer the property devised to the Presbyterian Church in accordance with the will, and on April 21, 1932, the Probate Court of Columbiana

county issued its certificate for the transfer of this real estate to the First Presbyterian Church of Salem, Ohio, which certificate was filed with the recorder on April 27, 1932, and duly recorded.

The Presbyterian Church filed its petition in the Common Pleas Court of Columbiana county against the executors and all persons who are residuary legatees and devisees under the will, setting forth therein that it is a religious society located in the city of Salem; that it has never used the property devised to it as a parsonage, but has rented the same and applied the rents to the lodging of its pastor, and that it now desires to sell the property. It-is further alleged that the executor has paid the debts and the specific bequests made in the will and that the estate has been duly closed and the executor discharged; that the defendant, The National City Bank of Cleveland, was appointed and is still acting as testamentary trustee, the will having given and devised two-thirds of the residuary estate to a named trustee, in trust upon the terms set forth therein.

The prayer of the petition is for the judgment and direction of the court in regard to the true construction of item three of the will and of plaintiff's rights thereunder; that the defendants be compelled to show their interest in the premises, if any, and that the same be adjudged null and void and plaintiff's title quieted against the same; and that it may have an order authorizing it to sell the premises.

The defendants, other than William J. Hum, answered, alleging that plaintiff has abandoned all intentions of using for parsonage purposes the premises described in item three of the will, and pray that the devise of the church be by proper judgment declared to be a specific conditional devise and that the court find that the church has rejected the condition of the devise; that two-thirds of the premises be by proper

judgment declared to pass to the trustee bank to be administered as provided in item five of the will.

William J. Hum filed a like answer, except that he claimed the other one-third of the residuary estate as the only surviving child of John Hum, deceased.

There is no dispute as to the facts, it being conceded that at the time the will was executed and at the death of the testatrix the church had a parsonage, and further, that the church does not ever intend to use the property devised to it by item three of the will for a parsonage; and there being no claim other than that the defendants are the persons entitled if it be held that the church is not by the terms of item three devised the unconditional and absolute title in fee simple to the premises.

The Common Pleas Court held that the testatrix had devised a fee simple title to the real estate to the church; that the church, at the commencement of the action, was in possession of the real estate and that it had the legal estate in and was entitled to the possession of the same; that none of the defendants, or any of them, have any estate in or are entitled to the possession of the real estate, or any part thereof, and that plaintiff ought to have its title and possession quieted as against each and every one of the defendants, and it was so ordered, adjudged and decreed, and further, that the church be authorized to sell the real estate for the best price obtainable.

Appeal on questions of law is duly prosecuted to this court by all the defendants to the action.

The cardinal rule of interpretation of a will is that effect be given to the intention of the testator, gathered from the four corners of the will, and arrived at by the language expressed therein. 41 Ohio Jurisprudence, 590 to 599.

Not only must we look to the language of item three itself, but as well to the residuary clause or clauses in the will of Ida L. McNutt, for the purpose of inter-

preting the meaning of item three, these being the only portions of the will having any bearing upon its interpretation, as we see it.

It is one of the claims of appellants "that the language in the will creates a conditional estate with both a condition precedent and a condition subsequent."

We see nothing in the will which creates a condition precedent to the vesting of title in the church:

"A condition precedent is one which must happen or be fulfilled or performed before the estate or interest can vest, while a condition subsequent is one whose happening, fulfillment, failure, nonperformance, or breach, according to the form of the condition, will determine, defeat, divest, curtail, or abridge an estate or interest already vested, and the test of the difference between the two is whether the act or event on which the estate depends is to be done or happen before or after the estate is to vest. * * * A condition may be considered as precedent where it is incorporated into the gift and subsequent where it is added after words which have already given a vested interest." 69 Corpus Juris, 675, Section 1783.

If the words "to be used as a parsonage," contained in item three of the will, create a condition affecting the title devised to the church, which is the ultimate question to be determined, the words convey no indication that the devisee must first use the property as a parsonage before acquiring any estate or interest in it. Indeed, it would be legally impossible for the church to use the property for any purpose before the vesting of some right or interest therein, and it is not shown that any right existed in the church other than that devised by the will. It is quite clear that the will gives and devises the home of testatrix to the church before anything is said either by way of requirement or request as to the use to which the home is to be or may be used.

"So, an apparent condition attached to a gift will,

when possible, be construed either as a condition subsequent or as imposing a trust and not preventing vesting or operating to cause a forfeiture if broken."

"As the law favors the vesting of estates, the courts, in construing a will, prefer conditions subsequent to conditions precedent and, in a case of doubt as to the testator's intention, will construe a condition to be subsequent rather than precedent where it is possible to do so without violating some established rule." 69 Corpus Juris, 676, Section 1784.

The very statement "to be used as a parsonage," indicates continuous action for its performance, and that the time for performance is indefinite, from which it follows, necessarily, that the condition, if condition it be, is subsequent rather than precedent. 69 Corpus Juris, 676, 677, Section 1786.

Nor does the language used in this will, either expressly or by implication, devise the home of testatrix in trust to the church for charitable purposes, and the principle upon which a trust may, under certain circumstances, be executed *cy pres* is not applicable to the situation here. *Bd. of Edn. of Van Wert*, v. *Inhabitants of Van Wert*, 18 Ohio St., 221, 98 A. D., 114.

In *Doan* v. *Vestry of Parish of Ascension*, 103 Md., 662, 64 A., 314, 7 L. R. A. (N. S.), 1119, it was held that a trust cannot exist where the same person possesses both the legal and the beneficial interest.

That a trust is created by the language used in this will can be argued only upon the theory that the church takes the property under the will upon condition that it use the same as a parsonage, and that upon refusal to use it for that purpose, or abandoning the use for that purpose after having first applied it to that use, the church holds thereafter in trust for the residuary legatees and devisees. This argument begs the question as to whether the language used actually creates a condition upon the nonperformance of which the title which had previously vested in the church is deter-

mined. We think that the question narrows down to this: Did the testatrix devise to the church (1) a base, qualified or determinable fee, that is, a fee simple title subject to a condition subsequent upon the nonperformance of which such title was debased, qualified or determined; or (2) a fee simple absolute with the expressed wish only of the testatrix that the home be used for a parsonage, the nonobservance or noncompliance with the wish in no way affecting the fee simple title of the church?

From 16 Ohio Jurisprudence, 393, and following we quote:

"Section 14. A base, qualified or determinable fee is an estate limited to a person and his heirs, with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end. Because the estate may last forever it is generally deemed a fee; and because it may end on the happening of the event it is designated as a determinable or qualified fee. The qualification annexed to a base, qualified or determinable fee may be either one of two kinds: It may be a qualification which is attached to the use of the land itself, so that the estate is held to be granted for that use and purpose only, and on the cessation of the use the estate expires; or it may be one which is concerned with the happening of a more strictly collateral event, leaving the use of the estate free for any purpose, but limiting its existence only by the event contemplated.

"Section 15. As shown above, one of the types of qualifications annexed to a base, qualified or determinable fee may be attached to the use of the land itself, so that the estate is held to be granted for that use and purpose only, and on the cessation of the use the estate expires. Such cases may be conveniently subjected to a twofold classification based upon whether or not the conveyance to a grantee for certain uses is with or without a condition of reverter. Ob-

viously, in situations where a condition of reverter is expressly superadded, a determinable or qualified fee is created. In situations where a use is specified but there is no express condition of reverter a more difficult problem arises. In such cases it is recognized that the mere expression of a purpose will not of and by itself debase a fee. But where an estate is conveyed in fee 'so long as' or 'during the time that' the property conveyed is used for a specified purpose, the prevailing view is that the fee is a qualified one, determinable upon the cessation of the use of the property for that purpose. The Supreme Court of Ohio, however, in a recent case, held that where a quitclaim deed, for valuable consideration, conveyed to trustees of an unincorporated church association certain real property, 'to have and to hold * * * unto the said grantees and their successors * * * so long as said lot is held and used for church purposes,' without any provision for forfeiture or reversion, such statement was not a condition or limitation of the grant; and that since the deed contained no provision for reversion or forfeiture, all of the estate of the grantor was conveyed to the grantees.

"Section 16. As indicated in the preceding section, it is the general rule that in situations where property is conveyed for a specified use but no express provision is made for a condition of reverter the mere statement of the purpose for which the property is to be used will not of and by itself debase a fee. The application of this rule to cases where an estate is conveyed for a stipulated use 'and no other' presents some difficulty. In such situations the law cannot be regarded as finally settled in Ohio. In the tentative draft of the American Law Institute on the restatement of the Law of Property the view seems to be taken that the general rule is applicable to a case where a use is specified and it is clearly indicated that no other use is permissible. The Supreme Court has

apparently adopted this view. The court, in construing a deed which stipulated that the grantees or their successors should 'not at any time use or occupy the aforesaid premises for any other purpose or purposes' than the one specified, held that as the deed contained no words of forfeiture or re-entry, the diverting of said lands to uses and purposes other than those expressed in the deed did not in legal effect revest title to the lands conveyed in the grantor or his heirs. The Common Pleas Court of Licking county, relying on the holding of the Supreme Court, held that a grant of land for specified purposes 'and no other' did not revert to the grantor upon abandonment of the stipulated use. Although there is formidable authority in favor of these views there is also a trend of judicial decision apparently to the contrary. Thus, it has been held that in a situation where property was conveyed for a specified use 'and for no other purpose whatever', upon abandonment of the specified use the property reverted to the grantor. In other words the fee conveyed was deemed a qualified one determinable upon the cessation of the specified use. The Ohio courts are prone to attach significance to the presence or absence of consideration in their determination of whether or not a grant for a stipulated use and no other should be so construed as automatically to revert in case of a cessation of the specified purpose. Thus, in cases where it is held that a reverter is not effectuated it appears that the grant is for a consideration, and in cases where a reverter is effectuated there is generally no consideration.''

See, also, *Village of Ashland* v. *Greiner*, 58 Ohio St., 67, 50 N. E., 99.

Paragraph two of the syllabus to the case of *Cleveland Terminal & Valley Rd. Co.* v. *State, ex rel., Ellis, Atty. Gen.*, 85 Ohio St., 251, 97 N. E., 967, 39 L. R. A. (N. S.), 1219, is as follows:

''When land is granted to a city upon a valuable

consideration to be used for streets and other purposes, the title will not, in the absence of an express stipulation to that end, revest in the grantor because the land is subsequently used for street and railroad purposes.''

To the same effect see also, *Watterson, Trustee,* v. *Ury,* 3 C D., 171, 5 C. C., 347; *Boyer* v. *Miller,* 21 N. P. (N. S.), 225, 29 O. D. (N. P.), 281.

The law does not favor forfeitures and does favor the vesting of estates; from which it follows that the law does not favor conditions subsequent and they are to be strictly construed. See, 11 L. R. A. (N. S.), 513; *Rawson* v. *Inhabitants of School Dist. No. 5 in Uxbridge,* 89 Mass. (7 Allen), 125, 83 A. D., 670; 41 Ohio Jurisprudence, 846, 847, Section 724; 16 Ohio Jurisprudence, 460, 461, Section 82; 35 Ohio Jurisprudence, 338, 339, Section 28; 7 L. R. A. (N. S.), 1122, 1123, 1124, citing: *Methodist Protestant Church of Cincinnati* v. *Laws,* 7 C. C., 211, 4 C. D., 562, affirmed without opinion—55 Ohio St., 662.

13 Ohio Jurisprudence, 960 to 964, Sections 147, 148, 149, reads:

''To create a condition in a grant, apt and appropriate words ought to be used, or a right of re-entry be reserved; a mere expression of purposes for particular uses to which the property is to be appropriated is not sufficient, * * *

''A condition will not be raised by implication from a mere declaration or recital in an instrument that the grant is made for a particular or certain purpose, unless it is coupled with words clearly showing upon their face such a condition, such as words indicating that the grant is to be void and the property to revert if the declared purpose is not carried out. The most that can be claimed for such recitals or statements is that they might be construed as the expression of a mere wish or desire on the part of the grantors to have the property used for the purposes indicated; but in

effect they are mere suggestions, unenforceable requests, or desires * * *.

"Conditions which in any way have a tendency to destroy or lessen estates are not favored by the law; such conditions are strictly construed, and all doubts are resolved against them in such way as to save the grant, and not to defeat it, even, it is said, to an extent hardly reconcilable with conscience, because on the breach of such conditions there is a forfeiture, and the law is adverse to forfeitures."

We are not called upon here to go so far as did the Supreme Court in the case of *In re Matter of Copps Chapel Methodist Episcopal Church,* 120 Ohio St., 309, 166 N. E., 218, where the habendum clause of the deed in question seems clearly to indicate that the grantee is to hold only "so long as" the conveyed premises are held and used for church purposes. Although there was no express provision in that deed for forfeiture or reversion, it seems that such was clearly implied from the language used in the habendum clause, and we find much force in the reasoning contained in the dissenting opinion by Marshall, C. J. The case indicates, however, how far the Ohio Supreme Court has gone in holding to the rule that the law does not favor forfeitures resulting from so-called conditions subsequent.

But it is contended by appellants that the rule just expressed, although it may be applied in grants by deed upon a valuable consideration, has no application to gifts or devises by will, not founded upon a valuable consideration.

It is reasoned by appellants, and supported by some authority, that the power to give includes the right to withhold or to fix the terms of the gift, no matter how whimsical or capricious they may be, only provided they do not in any way violate the law. "Gifts made conditional on the residence of the donee in a particular place, or that he will occupy the premises devised,

have been frequently upheld; but such condition must be clearly expressed, so as to avoid uncertainty." Thompson on Wills (2 Ed.), 473, Section 386.

It seems to the writer that the reasoning upon which it is claimed that the power to give includes the right to affix a condition to the gift limiting the right, interest or estate given or devised, is based upon a premise that would leave nothing to be decided, that is, that the language used is in fact sufficient to limit the grant to the specified use, and upon the failure or refusal of the donee to so use the property the estate therein is debased, qualified or determined; the ultimate question being the interpretation of the intention of the donor, in this case the testatrix, as determined from the language of the will.

On the one hand, the appellants here contend that the language used in the will of Ida L. McNutt is not of doubtful meaning; that this language definitely limits the title of the church to such period of time as it uses the devised real estate for a parsonage; that the court should give effect, if possible, to every provision of the will and not try to find a reason for avoiding or rejecting any portion of it. Citing: *Rugg* v. *Smith,* 40 Ohio App., 101, 177 N. E., 784.

This reasoning gives application to but one rule of construction at the sacrifice of many other rules of equal force and merit, all of the rules of interpretation being to the end that the true intent of the testatrix is the goal to be attained.

It is, of course, contended by appellee that the testatrix by apt language has devised the fee simple title or estate to the church, with but an added statement which merely expresses the wish of testatrix that the property be used as a parsonage, but without any indicated intention that the title of the church is to terminate if her wish is not complied with, and that by the application of the rules that forfeitures are not favored, and

conditions subsequent are not favored, that the law favors the vesting of estates, that mere words of expression as to the use to which the property is to be devoted, without any provision for reverter in case such use is not made, do not debase the fee otherwise granted; that no apt words are used in this will expressly limiting the estate granted to such period of time as the property is used for the purpose stated—all these are of such force and effect as interprets the intention of the testatrix by the language used to grant an absolute estate in fee simple, with the mere wish that the same may be used for a parsonage, but without any intention to terminate the estate if the devisee does not use the property for the purpose stated.

Our conclusion is that the contention of the appellee is sustained by the overwhelming weight of authority and is reinforced by the fact that in Ohio it is provided by Section 10504-72, General Code, (former General Code Section 10580, Revised Statutes, Section 5970) as follows:

"Every devise in a will of lands, tenements or hereditaments, shall convey all the estate of the devisor therein, which he could lawfully devise, unless it clearly appears by the will that the devisor intended to convey a less estate."

Of course, this statute creates merely a rule of interpretation which must give way to the otherwise clearly expressed intention of the testatrix, but is to be applied where the language of the grant is such as to require interpretation. And it has been almost universally held that a mere statement of the purpose of a gift is not a condition. *Whitmore* v. *Church of the Holy Cross,* 121 Me., 391, 117 A., 469.

We have examined many authorities other than those cited to us in briefs of the parties or referred to hereinbefore, among which are: Page on Wills, (2 Ed.), 1928, 1929, Section 1154; *Baker et al., Exrs.,* v. *Alexander,* 24 Ohio App., 117, 156 N. E., 223; *Bd. of Edn.*

*of Lebanon Village School Dist.* v. *Hollingsworth,* 56 Ohio App., 95, 10 N. E. (2d), 25; *Fields* v. *Fields,* 139 Ore., 41, 3 P. (2d), 771; *Allen, Admr.,* v. *City of Bellefontaine,* 47 Ohio App., 359, 191 N. E., 896; *Case* v. *Hall, Admr.,* 52 Ohio St., 24, 38 N. E., 618, 25 L. R. A., 766; *Collett* v. *Cook,* 3 C. C., 119, 2 C. D., 68; *May* v. *Bd. of Edn.,* 12 Ohio App., 456; *Schurch et al., Trustees,* v. *Harraman,* 47 Ohio App., 383, 191 N. E., 907; Thompson on Wills, (2 Ed.), 422, 460, Sections 346 and 375; *Cleveland* v. *Thornton et al.,* 26 Ohio App., 377, 160 N. E., 488; *Parthe et al.,* v. *Parthe et al.,* 6 Ohio App., 317; *Minor* v. *Shippley,* 21 Ohio App., 236, 152 N. E., 768; *Worman* v. *Teagarden,* 2 Ohio St., 380; Restatement of the Law, Property, 144 *et seq; Adams* v. *First Baptist Church of St. Charles,* 148 Mich., 140, 111 N. W., 757, 11 L. R. A. (N. S.), 509.

From the latter case we quote the syllabus, as reported in L. R. A., as follows:

"A devise of real estate to a religious corporation, 'to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else,' does not create a condition subsequent which will cause a forfeiture, if the property is devoted to other uses."

From our painstaking and thorough search of the authorities we find and hold that no error prejudicial to the rights of the appellants, or any of them, intervened in the Common Pleas Court, and its judgment, therefore, must be and is affirmed.

*Judgment affirmed.*

CARTER, J., concurs.
PHILLIPS, J., not participating.