REISS, EXR., APPELLANT, *v.* PEARSON, APPELLEE, ET AL., APPELLANT.

(No. 22155—Decided June 4, 1951.)

*Mr. H. C. Boyd,* for appellant individually and as executor.

*Messrs. Deibel, Elbrecht & Roberts,* for appellee.

THOMPSON, J. This cause comes to this court on appeal on questions of law from a judgment of the Pro-

bate Court of Cuyahoga County in an action by an executor for construction of a will. The defendants are a sister of decedent and the executor in his individual capacity as a legatee. The will of decedent, after providing for payment of debts, declared as follows:

"Item 2. All of my real property consisting of a single house and lot located at 14319 Alder avenue, East Cleveland, Ohio, I give and devise to Nelson B. Reiss of East Cleveland, Ohio, absolutely and in fee simple.

"Item 3. I give and bequeath to Nelson B. Reiss, for use during his life, all my shares of the capital stock, of the National Screw & Manufacturing Company, consisting of 304 shares at the present time, but any shares of said capital stock remaining undisposed of, on the death of said Nelson B. Reiss, shall revert to and become the property, absolutely, of my sister, Laura Helen Pearson, residing at 745 Twenty-First Avenue, North, St. Petersburg, Florida.

"Item 4. I give and bequeath all my remaining personal property to said Nelson B. Reiss, to dispose of, as he sees fit; and I appoint said Nelson B. Reiss, to be the executor of this my last will and request that no bond be required of him, as such executor. Dated at Cleveland, Ohio this 10th day of April 1947.

"Mary Amelia Hosick"

It will be noted from the foregoing that the executor, Reiss, is the devisee of the real estate and residuary legatee. The sole question raised by the petition for construction of the will is as to the nature of his interest as legatee in the shares of stock in the National Screw & Manufacturing Company bequeathed in item three. It was stipulated in the hearing in the Probate Court that decedent sold 50 shares of this stock after making her will, leaving 254 shares in her name at the time of her death.

The Probate Court in its decree found that the executor was granted only a life interest in the 254 shares of stock, declared him to be entitled to the dividends on such stock only during his lifetime, and held that the shares themselves would pass upon his death to the decedent's sister.

Reiss on appeal to this court claims he is entitled not only to the dividends but to the principal of the stock as well.

The cardinal principle in the construction of wills has been frequently stated. In *Tax Commission* v. *Oswald, Exrx.*, 109 Ohio St., 36, at page 48, 141 N. E., 678, Judge Day phrased the principle as follows:

"Now, it is rudimentary in the construction of wills that the intention of the testator is to be ascertained, and the whole will given force and effect, if such a construction can be reached consistent with the application of legal principles, and that, when an instrument is open to two constructions, one of which will give effect to the whole instrument and the other will destroy a part of it, the former must always be adopted."

It is because of this difficulty in determining the intention of the testator that a court usually obtains little help in a will construction case from other decided cases. 33 American Jurisprudence, 470, 471, Section 11. We have made a careful search of the Ohio and other decisions, but most of these have been of small avail as a guide in the instant case. The sole question here is whether the testatrix intended to give a mere life estate in the stock to the legatee, Reiss, with the right to use dividends only and a gift over to her sister of the entire principal, or whether Reiss was given the right to sell, consume, or dispose of the stock for the purpose of maintenance and support.

We have examined the original will and it is appar-

ant that the typist rather than the testatrix supplied the punctuation, or at any rate someone unfamiliar with elementary rules of punctuation. Numerous commas are misplaced. In ascertaining the intention of the testatrix, we are unable to obtain aid in interpretation by bearing down on the punctuation supplied in this will. Note, for example, in item three above quoted, the comma after the word, "stock," in the phrase, "stock of the National Screw & Manufacturing Company." It is this faulty punctuation generally in the will which adds to the difficulty of ascertaining whether the phrase in item three, "but any shares of said capital stock remaining undisposed of," refers to shares undisposed of by testatrix at her death or shares undisposed of at the death of Reiss. We are compelled to reach our conclusions without too rigid adherence to the rules of punctuation.

With this preliminary comment, and recognizing that a life estate may be created in personal property, was a life estate created by this will of a nature granting the life tenant the right to use and consume the principal? We believe it was not. We find the word, "use," in item three, as employed by the testatrix, to be of particular significance as we reach this conclusion. Reiss is given the stock "for use during his life." No other words amplify or add to this phrase. Reiss is given no right to sell or to consume, but is given the "use" only. If the personalty involved in this case had been an automobile, furniture, books, or personal effects, we believe it would be readily agreed that the word, "use," would imply the right of use until exhaustion, but such grant would not of itself imply the right of sale of the object. Why should the mere grant of use of securities imply a right to sell or consume the principal? We believe it does not. The mere fact that the use of an automobile may have

more pleasurable incidents for a life beneficiary than the use of stock of equivalent value does not permit us to find that a right of sale is impliedly attached to the use in the latter case. There being a gift over upon the death of Reiss, we can not find any implied right to sell or to consume the principal.

Where courts have found such right of sale or consumption coupled with a life estate, it has ordinarily been the result of express words to that effect, and not by implication. Cases cited as authority by the attorney for the executor are proof of this statement. Thus, in *DeWolf* v. *Frazier*, 80 Ohio App., 150, 73 N. E. (2d), 212, item five of the will provided as follows:

"Item 5. The balance of my estate both real and personal of every description be given to my sister, Agnes Frazier, of Sidney, Ohio, if she still be living, to do with and use as she see best fit to do. And after her death what is left if any be given to my nephew's children which are now living, of Urbana, Illinois, to share and share alike."

In view of the broad language used in the grant of the estate to Agnes, the court there held that it was the intention of the testatrix to give a life estate to Agnes with power to consume, and that upon the death of Agnes the nephew's children became the absolute owners of all the property which was unconsumed.

We find that the will in the instant case gives lesser rights to the life beneficiary than was given by the will in the case of *De Wolf* v. *Frazier, supra*. The testatrix in the pending case expressly bequeathed the stock to appellant "for use during his life." The testatrix appears to have known how to have given an estate absolutely, and she expressly gave the appellant her real estate "absolutely in fee simple" and the balance of her personal property, excluding the stock, she gave and bequeathed to appellant "to

dispose of as he sees fit." As to the stock, after giving him the use for life, she expressly provided that any shares undisposed of "shall revert to and become the property absolutely of my sister."

Similarly, in the case of *Bishop* v. *Remple,* 11 Ohio St., 277, cited by counsel for plaintiff, the testator left his estate, real and personal, to his wife "with full power to have and to hold, to sell or convey the same during the term of her natural life." The Supreme Court said that it was unnecessary to determine whether the estate granted to the wife was a life estate or a fee, and pointed out that, in view of the right granted to the beneficiary to sell and convey, it was obviously not a naked life estate. In the instant case, the estate to Reiss is for life only, and we are unwilling to grant to him by implication additional rights not expressly granted in the will.

Without attempting to discuss the many cases we have examined on the subject, we refer to the leading Ohio cases of *Johnson* v. *Johnson,* 51 Ohio St., 446, 38 N. E., 61, and *Krumm* v. *Cuneo,* 71 Ohio App., 521, 47 N. E. (2d), 1003, which have been helpful to us in reaching our conclusion that we are unwilling to enlarge a life estate by reading into the will by implication a power of sale or disposal. Analysis of the decided cases has brought us to the conclusion that where courts have found any such powers in the life tenant, these powers have been granted in express words and not by implication.

We have considered the argument of plaintiff to the effect that the language of testatrix that any shares of the capital stock "remaining undisposed of, on the death of Nelson B. Reiss shall revert to and become the property, absolutely, of my sister" implies a right of disposal or consumption by the life beneficiary. In our opinion, this language with reference to disposi-

tion is equally applicable to action by the testatrix, particularly in view of the fact that she actually did dispose of fifty shares of this particular stock before her death. To permit Reiss to have the right to sell and dispose of the stock for his support and maintenance, we would insist upon clear and precise authority granted to him to do so, and we will not construe as evidencing such authority words ambiguous, indirect, or equally susceptible of application to testatrix.

The closest case we have found in Ohio is *Rugg* v. *Smith,* 40 Ohio App., 101, 177 N. E., 784. The tenth paragraph of the syllabus holds as follows:

"Will bequeathing corporate stock to brother, and at brother's death equally to brother's named children who were not otherwise provided for, passed only life estate to brother."

In that case, testator left one-eighth of the stock in a certain corporation to each of his brothers, including Sylvester. Item five of the will subsequently declared that the one-eighth interest given to his brother Sylvester should be divided at his death equally between his two daughters. In an action to construe the will, it was held that the brother took a life estate only, without power of disposal.

In 43 Words and Phrases, 474, under the title, "Use," and subtitle, "Effect of devise, bequest or conveyance of use of realty or personalty," two cases are cited to which we refer. One is the Ohio case of *Schwartz* v. *Gehring* (8th Circuit, Cuyahoga County, 1892), 7 C. C., 426, 4 C. D., 662, cited as holding as follows:

"The word 'use,' in a will bequeathing to testator's wife the 'use' of all testator's real and personal property, creates a life estate in the wife."

The other case is *Mead* v. *Welch, Internal Revenue Collector* (C. C. A., Cal., 1938), 95 F. (2d), 617, in which

the holding, as stated in the syllabus, is as follows:

"3. The word 'use,' standing alone, in bequest for use during life, indicates a use without impairment of corpus, and life tenant may not impair the principal."

In the Ohio case of *Schwartz* v. *Gehring, supra,* the testator devised and bequeathed to his wife the use of his real and personal property during her lifetime, one-half of the property after her death to go to his relatives and one-half to her relatives. The wife during the period of her lifetime received the income from the real and personal property and made a will devising approximately $8,000 consisting of income received and saved by her. After her death, the question arose whether she had the right to bequeath the savings she had accumulated from the use of the property. This court held that the $8,000 properly passed under the will to the legatees of the wife.

Attention is also called to the case of *Crocker* v. *Crocker,* 28 Mass., 252, in which the will of testator gave the plaintiff the use of a sum of money ($300) for her life, remainder to one of her sons. It was held that this was a gift of the income from the $300 only during the life of plaintiff.

We are further reinforced in our view that the executor in the instant case takes only a life estate by the principle of law that a life estate by implication is created where a testator devises property to the testator's own heirs after the death of another. Numerous cases recognize a clearer manifestation of an intent to cut down a larger estate to a life estate where the remainder thus created would pass to a person related to the testator than where such remainder would pass to a stranger, because the testator would normally have a stronger motive to prefer the former class. 33 American Jurisprudence, 480, Section 17.

With reference to determining the intent of the tes-

tatrix in the instant case, we should add one further point. Except at least as to latent ambiguities, the efforts of courts to determine the intent of the testator in the construction of a will are properly addressed to an examination of the will itself and the circumstances under which it was made. This does not mean that parol evidence will be received to show that the testator intended something different from what he expressed by the terms used in his will. If parol evidence were permitted to be offered for the purpose of altering or controlling the provisions of the will, it would have the effect of substituting an oral will for a written will, contrary to the express provision of the statute. *Crocker* v. *Crocker, supra.* For this reason, we believe the Probate Court should have excluded testimony of the scrivener as to the intent of the testator, but we do not find that the objectionable testimony operated prejudicially to appellant. *Clark* v. *Trustees* (8th Circuit, Cuyahoga County, 1888), 3 C. C., 152, 2 C. D., 87; Addams and Hosford, Ohio Probate Practice and Procedure (3 Ed.), 633, paragraph 9; Deibel's Ohio Probate Law (4 Ed.), Section 570.

The judgment of the Probate Court is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and HURD, J., concur.